IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 21-cr-246-DDD

UNITED STATES OF AMERICA,

        Plaintiff,

v.

1. JASON MCGUIRE,
2. TIMOTHY STILLER,

        Defendants.

---

**JOINT MOTION FOR ADDITIONAL PEREMPTORY CHALLENGES**

---

Jason McGuire and Timothy Stiller, by and through their respective undersigned counsel, respectfully request an additional total four peremptory challenges for both Defendants to ensure that they receive a fair and impartial jury. As grounds in support, Mr. McGuire and Mr. Stiller state as follows:

**INTRODUCTION**

This case involves multiple charges and two defendants with differing circumstances and concerns, and the defense is concerned about its ability to seat a fair and impartial jury. The antitrust conspiracy charge in Count One carries risks of confusion and misdirected emotion because it: (1) involves a byzantine factual case (nine individually-complex episodes) with dozens of players; (2) it involves a complex statute defining an unfamiliar, non-intuitive crime that attempts to draw a hair-thin line between legal and illegal activity; and (3) it accuses Mr. McGuire

and Mr. Stiller of agreeing to fix the price of a food staple sold at familiar fast-food restaurants and stores, in a trial set during a period of inflation. This case and the related cases also have been widely publicized, creating additional concerns about bias.

## APPLICABLE LAW

1. An impartial jury is guaranteed by the Sixth Amendment. "[P]art of the guarantee of a defendant's right to an impartial jury is an adequate voir dire to identify unqualified jurors." *Morgan v. Illinois*, 504 U.S. 719, 729 (1992). "Voir dire examination serves the dual purposes of enabling the court to select an impartial jury and assisting counsel in exercising peremptory challenges." *Gardner v. Galetka*, 568 F.3d 862, 890 (10th Cir. 2009) (quoting *Mu'Min v. Virginia,* 500 U.S. 415, 431 (1991)).

2. Further, the Supreme Court has "long recognized the role of the peremptory challenge in reinforcing a defendant's right to trial by an impartial jury." *United States v. Martinez-Salazar,* 528 U.S. 304, 311 (2000); *Skilling v. United States*, 561 U.S. 358, 388 n.21 (2010) (peremptory challenges "provide protection against prejudice" caused by media coverage). "The presence of even a single biased juror deprives a defendant of his right to an impartial jury." *Morgan*, 504 U.S. at 729; *Martinez-Salazar*, 528 U.S. at 316.

3. If tried individually, each defendant would have the right to exercise ten peremptory challenges with the goal of securing a fair and impartial jury. However, since they are being tried together, Federal Rule of Criminal Procedure 24 effectively allots only five challenges per defendant.

4. Rule 24(b) affords broad discretion to a trial court to "allow additional peremptory challenges to multiple defendants and may allow the defendants to exercise those challenges separately or jointly." Courts routinely exercise this discretion as appropriate to ensure a fair and

impartial jury. *See, e.g.*, *Skilling*, 561 U.S. 358 (noting that he court granted additional peremptories); *United States v. Battle*, 1997 WL 447814 at *21-22 (D. Kan. June 27, 1997) (permitting each of the four defendants to exercise three challenges to ensure a fair trial); *United States v. Marr*, No. 14-CR-00580-PJH, 2017 WL 1540815, at *7 (N.D. Cal. Apr. 28, 2017) (granting additional peremptories in a multi-defendant bid-rigging prosecution); *United States v. Dimora,* 2011 WL 5361129 at *6-8 (N.D. Ohio Oct. 31, 2011) (granting additional peremptory challenges based on *Skilling*); *United States v. Cordero*, No. 97-CR-63, 1998 WL 52034, at *4 (N.D.N.Y. Jan. 30, 1998) (granting extra "preemptory" challenges in a three-defendant drug conspiracy case, with details conditional on how many ultimately go to trial).

**ARGUMENT**

5.    Additional peremptory challenges are needed because this case involves two Defendants who face different sets of charges, because the underlying statutes and evidence are complex, because of the publicity of the case, and because of the likelihood of confusion and misplaced concern from jurors affected by ongoing inflation.

6.    First, there are two Defendants and multiple different charges in this case. Messrs. McGuire and Stiller face the same antitrust count, but they are accused of taking part in different alleged price-fixing episodes in different ways. Their factual circumstances are distinct in a manner that may matter to a jury. Mr. McGuire, for instance, left his employment at Pilgrim's Pride in 2016, whereas Mr. Stiller remained employed at Pilgrim's Pride throughout the rest of the alleged conspiracy. Further, and notably, Mr. Stiller faces three additional counts involving allegations of witness tampering and obstruction that raise different and serious concerns about impartiality in a joint trial involving all four charges. In short, Defendants' specific concerns about fairness may diverge.

3

7. The primary charge involves complex factual allegations. The Superseding Indictment accuses Defendants of "enter[ing] into and engag[ing] in a continuing combination and conspiracy to suppress and eliminate competition by rigging bids and fixing prices" over at least a seven year period," which conspiracy allegedly involved fourteen different so-called "episodes" of price fixing. The August 15, 2022 Bill of Particulars setting forth "the episodes that the government will rely upon at trial" does little to reduce the complexity of the case. The Bill includes nine separate, individually-complex alleged episodes involving dozens of players and alleged conversations. To render accurate verdicts, jurors must be willing and able to track, distinguish between, weigh, and recall the evidence presented.

8. In addition to the case's factual complexity, the underlying law is also complex. The Sherman Act, 15 U.S.C. § 1, defines an offense that is unfamiliar to laypersons, unintuitive (not a common-law or *malum in se* offense), and vague. The line between legal and illegal conversations and activities may be subtle, if discernible at all. As the Supreme Court has observed, "the behavior proscribed by the Act is often difficult to distinguish from the gray zone of socially acceptable and economically justifiable business conduct." *United States v. U.S. Gypsum Co.,* 438 U.S. 422, 440–41 (1978). This complexity underscores the importance of selecting an unbiased jury in this matter.

9. Defendants are accused of fixing the price of a staple food, in a trial involving familiar fast-food restaurants and grocery stores, and set during a period of inflation. Government statistics indicate that poultry prices in the Denver metropolitan area are currently inflating at an annual rate exceeding 14 percent.[1] Such rapid and historically unusual inflation has garnered

---

[1] *See Consumer Price Index, Denver-Aurora-Lakewood area – July 2022,* U.S. Bureau of Labor Statistics, at https://www.bls.gov/regions/mountain-plains/news-release/consumerpriceindex

extensive local and national media attention.[2] Given this backdrop, there is an obvious and significant risk of confusion and possibly anger by members of the jury pool, and the exercise of peremptory challenges is necessary for Defendants to protect themselves against this potential for bias.

10. And finally, that risk of bias and misplaced anger has been exacerbated by the government's public statements and the media's accusatory coverage. For example, a July 29, 2021 press release issued by the government to publicize the indictment of Messrs. McGuire and Stiller includes the following inflammatory comments:

> "As today's charges show, the division remains committed to holding both individuals and companies accountable when they choose profits over following the law," said Acting Assistant Attorney General Richard A. Powers of the Justice Department's Antitrust Division. . . .
>
> "Price fixing is not a victimless crime, and the illegal actions taken by these companies and individuals in the broiler chicken industry have had a direct and negative impact on the American consumer," said Assistant Director in Charge Steven M. D'Antuono of the FBI Washington Field Office. "The FBI is committed to pursuing those who violate antitrust laws, harming the nation's free and competitive marketplace all for their own monetary gain."[3]

---

_denver.htm ("Prices for food at home advanced 13.6 percent over the year, partly due to a . . . 14.3-percent increase for meats, poultry, fish, and eggs.").

[2] *See, e.g.*, *A Jump in Grocery Prices is Pinching Consumers,* New York Times (Sept. 13, 2022), https://www.nytimes.com/live/2022/09/13/business/inflation-cpi-report#a-jump-in-grocery-prices-is-pinching-consumers ("Food inflation in the United States has risen to its highest level in more than 40 years this year . . . ."); *Colorado Food Banks Hustle to Fill Shelves as Inflation Continues to Impact Supply Chain,* Colorado Public Radio (Sept. 15, 2022), https://www.cpr.org/2022/09/14/colorado-food-banks-inflation/ (reporting that lower-wage workers are "scrimp[ing] on food" due to inflation).

[3] *See* https://www.justice.gov/opa/pr/four-executives-and-company-charged-price-fixing-ongoing-investigation-broiler-chicken.

11.     Following that press release, local and national media reported on this case, often parroting the government's point of view.  For example, the *New York Times* ran a negative op-ed about "Big Chicken," accusing producers of "overcharging Americans by as much as 30 percent" and hyperlinking the above DOJ announcement   *Break Up Big Chicken,* New York Times (Aug. 17, 2021)[4]; *Poultry Price-Fixing Prosecution Pulls in More Employees of Greeley-Based Pilgrim's Pride,* Denver Business Journal (Aug 16. 2021).[5]  Many such stories include a statement from Pilgrim's Pride that none of the four individuals originally charged in this case work there anymore.  Any potential juror who has read such coverage may be unfairly biased against the Defendants, and peremptory challenges are necessary for the Defendants' to guard against such prejudice.

12.     The related *Penn* case also received extensive, and similar, attention in the local and national press.  *See e.g., Pilgrim's Pride Chief Executive Is Accused of Price Fixing,* New York Times (June 3, 2020)[6]  (quoting then-Assistant Attorney General Makan Delrahim: "Executives who cheat American consumers, restaurateurs and grocers, and compromise the integrity of our food supply, will be held responsible for their actions."); *CEO of Colorado-Based Pilgrim's Pride Among Those Indicted for Chicken Price Fixing,* Colorado Sun (June 5, 2020).[7]

---

[4] https://www.nytimes.com/2021/08/17/opinion/antitrust-big-tech.html?searchResultPosition=1.

[5] https://www.bizjournals.com/denver/news/2021/08/16/pilgrims-pride-price-fixing-prosecution-grows.html.

[6] https://www.nytimes.com/2020/06/03/business/pilgrims-pride-chicken-price-fixing.html?searchResultPosition=1.

[7] https://coloradosun.com/2020/06/05/pilgrims-pride-chicken-price-fixing/.

13. On April 21, 2022, just after the second *Penn* mistrial, Assistant Attorney General Jonathan Kanter promoted his vigorous prosecution of these and other cases during a public speech at the University of Chicago, in which he stated:

> I am here to declare that the era of lax enforcement is over, and the new era of vigorous and effective antitrust law enforcement has begun . . . . [A]ntitrust helps make us both prosperous *and* free. . . . Our duty is to litigate, not settle . . . .[8]

14. In his speech, Mr. Kanter specifically referenced his appearance before Judge Brimmer in connection with the decision to pursue a third trial in *Penn*:

> I want to end by reflecting on my duty. I swore an oath to uphold the laws. Just last week, I appeared before a federal court in Denver where I explained just how seriously I take my obligation to protect the American public under the antitrust laws. Antitrust is a kitchen table issue. The public depends on us to police the channels of commerce against collusion and monopoly. *When we fail, families struggle to afford groceries*. They earn lower wages. They lose control of their own private data to dominant platforms. *The American Dream slips away.* That is why the Department of Justice must zealously protect competition.[9]

Mr. Kanter's speech received further media attention. *E.g., DOJ Antitrust Head: No 'Chickenshit Club' Despite Losses*, Law360 (April 21, 2022).[10]

15. These comments skate close to, and potentially violate, the ethical prohibition on public comments "that have a substantial likelihood of heightening public condemnation of the accused," *see* Colo. R. of Prof'l Conduct 3.8(f), or that "the lawyer knows or reasonably should

---

[8] https://www.justice.gov/opa/speech/assistant-attorney-general-jonathan-kanter-delivers-keynote-university-chicago-stigler.

[9] *Id.*

[10] https://www.law360.com/articles/1486196/doj-antitrust-head-nochickenshit-club-despite-losses

know will be disseminated by means of public communication and will have a substantial likelihood of materially prejudicing an adjudicative proceeding in the matter," *see* Colo. R. Prof'l Conduct 3.6. *See also Douglas v. Workman*, 560 F.3d 1156, 1195 (10th Cir. 2009) (prosecutors are subject to special "constraints and responsibilities," most notably to "serve truth and justice first" and to "give those accused of a crime a fair trial") (internal quotation marks omitted); *Kyles v. Whitley*, 514 U.S. 419, 439 (1995) (a prosecutor's interest "is not that it shall win a case, but that justice shall be done").

16.     At least one remedy for this risk of prejudice is additional peremptory challenges for the Defendants. This is particularly so given that much of the negative media attention, as explained above, has come as a result of the government's actions. *See United States v. Walker*, 890 F. Supp. 954, 957 (D. Kan. 1995) (finding "a probing voir dire" and special instructions appropriate to ensure a fair trial despite the government's improper extrajudicial statements)

WHEREFORE, for all of the reasons stated above, Defendants respectfully request an additional four peremptory challenges for both Defendants based on their Sixth Amendment right to a fair and impartial jury.

Respectfully submitted this 26th day of September, 2022.

/s/ Kristen M. Frost
Patrick L. Ridley
Kristen M. Frost
Ridley, McGreevy & Winocur, P.C.
303 16th Street, Suite 200
Denver, CO 80202
Telephone: (303) 629-9700
Fax: (303) 629-9702
ridley@ridleylaw.com
frost@ridleylaw.com
*Attorneys for Timothy Stiller*

/s/ D. Jarrett Arp
D. Jarrett Arp
Paul J. Nathanson
Uzo Asonye
Davis Polk & Wardwell LLP
901 15th Street NW
Washington, DC 20005
(202) 962-7105
jarrett.arp@davispolk.com

Tatiana R. Martins
Greg D. Andres
Davis Polk & Wardwell LLP
450 Lexington Avenue
New York, NY 10017
(212) 450-4085
tatiana.martins@davispolk.com
*Attorneys for Jason McGuire*

I hereby certify that the foregoing pleading complies with the type-volume limitation set forth in Judge Domenico's Practice Standard III (A) (1).

## CERTIFICATE OF SERVICE

    I hereby certify that on this 26st day of September, 2022, I served a true and correct copy of the foregoing **JOINT MOTION FOR ADDITIONAL PEREMPTORY CHALLENGES** electronically with the clerk of the court via the CM/ECF system to all interested parties.

**Michael Thomas Koenig**
U.S. Department of Justice-DC-Antitrust Division
450 Fifth Street NW
Washington, DC 20530
202-616-2165
Email: Michael.Koenig@usdoj.gov

**Sara Michelle Clingan**
U.S. Department of Justice-DC-450 5th Street
450 5th Street N.W.
Washington, DC 20530
202-480-1951
Email: sara.clingan2@usdoj.gov

**Daniel Loveland**
U.S. Department of Justice-DC-450 5th Street
450 5th Street N.W.
Washington, DC 20530
202-476-0453
Email: daniel.loveland@usdoj.gov

**Yixi Cecilia Cheng**
U.S. Department of Justice-DC-950 Pennsylvania Avenue
Robert F. Kennedy Building
950 Pennsylvania Avenue, N.W.
Washington, DC 20530
202-705-8342
Email: yixi.cheng@usdoj.gov
*Attorneys for the United States*

**Laura Butte**
U.S. Department of Justice-DC-450 5th Street
450 5th Street N.W.
Washington, DC 20530
202-598-6080
Email: laura.butte@usdoj.gov

*/s/ Scott Widney*
Scott Widney
Ridley, McGreevy & Winocur, P.C.
303 16th Street, Suite 200
Denver, Colorado  80202
Telephone: (303) 629-9700
Fax: (303) 629-9702
Email widney@ridleylaw.com
